## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **RAMON LOPEZ** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil No. **PJM 09-1942** |
| | * | |
| **KATHLEEN GREEN, et al.** | * | |
| | * | |
| Defendants. | * | |

## <u>MEMORANDUM OPINION</u>

*Pro se* Plaintiff Ramon Lopez has sued Kathleen Green, Warden of the Eastern Correctional Institution ("ECI"), and Doctor Gedion Atnafu, a physician at the Jessup Regional Hospital ("JRH"), under 42 U.S.C. § 1983, alleging inadequate care and deliberate indifference to his medical needs while incarcerated in Maryland.[1]  The Court previously granted Green's Motion for Summary Judgment [Paper No. 15], and now considers Atnafu's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment [Paper No. 35].  For the following reasons, Atnafu's Motion to Dismiss is **GRANTED**.[2]

## I.

Lopez alleges that in November 2006, while an inmate at ECI, he requested treatment for Hepatitis C.  He says his request was denied, claiming that doctors at ECI would not see him.  He further alleges that in May and June of 2007 he reported being sick and complained of pain in his "liver area."  These symptoms, he says, were misdiagnosed as heartburn, and in July he was rushed to a hospital in Salisbury, Maryland with a severe case of pancreatitis.

---

[1] Lopez names several "John Doe" and Jane Doe" doctors as Defendants in his Complaint, but has never sought to substitute real parties or served them with process. Accordingly, the Court will dismiss the Doe Defendants from the case.
[2] Atnafu's Motion for Summary Judgment is **MOOT**.

Lopez next alleges that he underwent "numerous tests and medical procedures" in Salisbury and received total parenteral nutrition.  Lopez claims that once he was discharged in early August he was transported to JRH, where Atnafu oversaw his continued care.  While at JRH, Lopez was taken to a hospital in Baltimore for a computerized tomography ("CT") scan and follow-up consultation with a surgeon, who told him he was recovering.  Lopez asserts that when he returned to JRH, he threatened to file suit against Atnafu, after which he was rushed to the Baltimore hospital where he was "operated [on] for necrotizing pancreatitis."  Lopez alleges that his pancreas "had literally rotted inside of [him]."  The operation occurred 72 days after his initial breakdown at ECI which, in Lopez's view, evidenced Defendants "deliberate indifference to [his] medical needs."

## II.

### A.

In evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the "court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff . . . ." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).  The court, however, need not accept as true "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Id*.  There must be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The complaint must contain sufficient well-pled facts to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  The factual allegations must "permit the court to infer more than the mere possibility of misconduct." *Iqbal,* 129 S. Ct. at 1950.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556).

A plaintiff proceeding *pro se* is held to a "'less stringent'" standard than a lawyer, and the court must construe his claims liberally, no matter how "'inartfully pleaded.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Nonetheless, even a *pro se* plaintiff is not exempt from the requirement that his complaint contain more than mere "'labels and conclusions'" or "'a formulaic recitation of the elements of [a] cause of action.'" *Walden v. Allstate Ins. Co.*, 388 F. App'x 223, 224 (3d Cir. 2010) (quoting *Twombly*, 550 U.S. at 555).

## B.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment'" and "states a cause of action under § 1983." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (citation omitted). To establish a valid claim, a prisoner must prove: "(1) that objectively the deprivation of a basic human need was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (citations omitted). With respect to the first element, a medical need is "serious" if it is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)). The second, subjective element is satisfied by showing deliberate indifference, i.e., that the prison officials knew of and disregarded "an excessive risk" to the plaintiff's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The prison officials must have had actual

knowledge of the serious risk of harm and also recognized that their actions were insufficient to mitigate the risk of harm arising from the plaintiff's medical needs. *Iko*, 535 F.3d at 241 (citations omitted).

It follows that mere negligence or malpractice on the part of prison officials does not violate the Constitution. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976). Officials who "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent" cannot be held liable. *Farmer*, 511 U.S. at 844. Officials who actually knew of a substantial risk to an inmate's health and responded reasonably to that risk, even if the harm ultimately was not averted, also cannot be held liable. *Id.*; *see also Bennett v. Reed*, 534 F. Supp. 83, 87 (E.D.N.C. 1981), *aff'd*, 676 F.2d 690 (4th Cir. 1982) (noting that when "it appears from the entire record that the prison medical authorities have made a sincere and reasonable effort to handle plaintiff's medical problems, plaintiff's constitutional rights have not been violated pursuant to 42 U.S.C. § 1983"). Indeed, the medical treatment provided must be so grossly incompetent, inadequate, or excessive as to shock the conscience or be intolerable to fundamental fairness. *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990). A prisoner's disagreement with medical providers about the proper course of treatment does not establish an Eighth Amendment violation absent exceptional circumstances. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citation omitted).

### III.

Atnafu argues that the Complaint fails to state a valid claim for inadequate medical care under § 1983. The Court agrees.

Assuming he was suffering from a serious medical condition, Lopez has simply failed to allege facts sufficient to show that Atnafu was deliberately indifferent to his needs. Lopez never

asserts that Atnafu was responsible for his medical care before he was transferred to JRH in early August 2007, in consequence of which Atnafu cannot be held liable for denying Lopez treatment for Hepatitis C, refusing to see him for weeks, or misdiagnosing his severe pancreatitis as simple heartburn, all of which occurred while Lopez was still an inmate at ECI.[3]  Nor does the Complaint demonstrate deliberate indifference on Atnafu's part once Lopez was moved to JRH. Lopez says that he was taken to a hospital in Baltimore for a CT scan and follow-up consultation with a surgeon, who told Lopez he was recovering, and then alleges, without explanation, that when he returned to JRH he threatened to sue Atnafu.  Whether that happened and whether or not it moved Atnafu to action is beside the point.  Lopez appears to have wanted immediate surgery or some other type of medical intervention and eventually he was removed to Baltimore for just such surgery.  At most what was involved may have been a disagreement with Atnafu's medical judgment, which in no sense amounts to constitutional deliberate indifference.  Lopez's disagreement as to the proper course of his treatment does not rise to the level of a constitutional violation unless there are exceptional circumstances, none of which are present here.  *See Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (whether defendant "should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding" constitutional liability). Far from being grossly incompetent, the care Lopez received after he was transferred out of ECI, which he himself acknowledges included a battery of diagnostic tests and procedures designed to address his acute pancreatitis, as well as outside consultations about potential surgery, was not inappropriate.  There is nothing to suggest that Atnafu was in any way slapdash in the treatment

---

[3] The Court does not express an opinion as to whether these purported shortcomings in the care Lopez received, by whomever, would be sufficiently serious to be actionable under § 1983.

he prescribed or otherwise indifferent to its effect on Lopez's condition.  As matter of law, the

Complaint states no claim for deliberate indifference.

## IV.

For the foregoing reasons, Atnafu's Motion to Dismiss is **GRANTED**.  His Motion for

Summary Judgment is **MOOT**.

A separate Order will **ISSUE**.


                                        _____/s/_____
                                        **PETER J. MESSITTE**
                                        **UNITED STATES DISTRICT JUDGE**
**June 1, 2012**